Case No. 17-3277. Barbara Fletcher, Timothy Philpott, Patrick Wilson-Pate, Lucinda Smith, v. Honeywell Intl Inc. Arguments also exceed 15 minutes. Besides, Mr. Allen, you may proceed to the information for rewriting. May it please the Court, Wynne Allen from Kirkland & Ellis on behalf of Honeywell. I'd like to reserve three minutes for rebuttal, if I may. All right. The key question in this case is whether Honeywell and the UAW agreed during collective bargaining negotiations in 2000 to provide retirees with a vested right to lifetime health care benefits that would continue even after the last CBA expired. Now, it's undisputed in this case that the 2000 CBA contained no language specifically imposing that obligation on Honeywell. The District Court, nonetheless, found the CBA ambiguous and relied on extrinsic evidence to find such a lifetime benefit. That holding was error, and this Court should reverse. First, to start with the plain text of the contract, the 2000 CBA unambiguously did not promise lifetime health care benefits to retirees, and we know that for a few reasons. First of all, each contract contained a clear durational clause, and as the Supreme Court recently said in Tackett, quote, contractual obligations will cease in the ordinary course upon termination of the bargaining agreement. Secondly, when the parties to this contract wanted to vest benefits for life, they did so explicitly and they did so clearly. For example, they expressly promised, quote, lifetime pension benefits, and they included detailed requirements for how pension benefits would vest. They expressly promised, quote, vested thrift savings contributions, and they expressly promised, quote, lifetime health care benefits for certain surviving spouses. The contract, however, does not expressly promise lifetime or vested health care benefits to retirees, and that's very significant. The UAW and Honeywell are sophisticated parties. They know how to vest benefits when they want to, and they chose not to do so in this contract. And as this Court has explained now three times, in Gallo, in Cole, and its most recent decision in Watkins, that difference in language demands a difference in meaning. As the Court said in Gallo, quote, we must assume that the explicit guarantee of lifetime benefits in some provisions and not others means something. It's also significant that in my view the contract provides for lifetime health care benefits for survivors of retirees and children of retirees. Yes, Your Honor. The contract started beginning in 2000. It's kind of hard to believe that the provision would be there for providers to get lifetime benefits but not for retirees, don't you think? Wouldn't the natural implication be that the retirees would also have the lifetime benefits since the retirees get it under the contract? I don't think so, Your Honor, for three reasons that I'd like to try to get out. And first of all, just to set the backdrop, that provision wasn't added to the contract until the year 2000. So there were 14 CBAs before the year 2000 that did not promise lifetime health care benefits to surviving spouses. So we're talking about the 2000 CBA and afterwards. And I think there's three responses. Well, unless, of course, the 2000 revision was a clarification of what previously existed. But go ahead. A couple of responses to your direct question, and I'll come back to that one. First of all, even if the court might think it's uncommon to grant lifetime benefits to surviving spouses but not retirees, uncommon is not the same thing as ambiguous. This is what two sophisticated parties bargained for, and they set it forth in the contract in plain terms. It's particularly true in the ERISA contract in context where Congress has placed a special emphasis on the written terms of retiree health care plans. Secondly, Your Honor, the district court was troubled and found ambiguity because he believed it would be uncommon for the parties to confer greater benefits on the surviving spouses than the retirees themselves had. That's just not true in this case, and I think you can understand that by focusing on the text of the contract. What would you say about our Circus Reefs case, which seemed to suggest that health care benefits being tied to pension benefits could result in there being an ambiguity that would need to be addressed by extrinsic evidence? I don't think that comes into play here, Your Honor, because I don't think there's any language in this contract that ties retiree health care benefits to their eligibility for a pension. At least plaintiffs haven't pointed to any, and the district court didn't either. So I don't think that that tying rationale can create ambiguity, and we know it certainly can't create vesting after gallow, but I don't think it comes into play here. One important point I wanted to get at was the district court thought it would be unreasonable to expect surviving spouses to have benefits that exceed those of the retirees. And that's just not true here, and I'd like to explain why. The CBA has promised lifetime health care benefits to surviving spouses of retirees who died during the term of the CBA. So if a retiree dies during the term of the CBA, the surviving spouse receives lifetime health care benefits. But if a retiree dies after the last CBA expires, then that promise has expired, and the surviving spouse does not receive lifetime health care benefits. So the benefits between the two parties are aligned. Either one, both the retiree and the surviving spouse have lifetime health care, or two, neither the retiree nor the surviving spouse receive benefits for life. So I think the benefits are actually aligned. Another point I'd like to make about the surviving spouse clause is the district court thought it would be uncommon or absurd to have that in the contract. And I don't think that's true. I think there's a number of good reasons why the parties could have done that. To have a surviving spouse clause, a clause that promised lifetime benefits for surviving spouses. First of all, it's much less costly to provide lifetime health care to just a limited number of surviving spouses than it would be to provide lifetime health care to both surviving spouses and retirees. It was also cheaper because Huntingwell was only obligated under the contract to pay 50% of the health care costs for surviving spouses, whereas it was obligated to pay 100% of the cost for retiree health care. Secondly, Your Honor, we know this isn't unusual or uncommon because we have at least one case where this exact fact pattern came up. That was in the Second Circuit's decision in Bouboulas at 442 F3rd 55. That case involved very similar language. It did not promise lifetime health care benefits to retirees, but did promise them to surviving spouses. And the court found that contract unambiguous and enforced it as written. As the Second Circuit said, quote, the promise to the surviving spouse does not require lifetime benefits for the retirees and does not constitute affirmative language that could reasonably be interpreted as creating a promise to vest the retiree's benefits. Mr. Allen, in that Bouboulas case, did the clause for benefits for the spouse and dependent children include this wording of will continue coverage? I believe it did, yes, Judge Bush. But I'll check that right now. But I believe it did. So let me understand Honeywell's position. Does Honeywell take the position that this clause, this number five that I'm quoting, allows for coverage of spouse and dependent children after the CBA has expired? Let me be very clear about that, Judge. For retirees who died during the term of one of these CBAs, so from 2000 to 2014, Honeywell believes it's obligated to provide lifetime benefits for surviving spouses. However, for retirees who died after the expiration of the last CBA, that promise has expired. And so Honeywell would not be obligated to provide lifetime coverage in that instance. I was confused because I thought that Honeywell had honored for retirees who had died after the CBA the benefits for the surviving spouse and children. No, I'm sorry for any inclarity about that. Honeywell believes that it signed a contract from 2000 to 2014 where if someone died during the term of that contract, it would agree to provide lifetime health care for those surviving spouses. And it has done so. It will continue to do so. But for any retiree who died after the CBA, no coverage. That's correct, Your Honor, because the promise expired with the last CBA. A couple of other points. Under this Babula's case, are there two interpretations of the contractual language such that depending upon whether the retiree is still receiving the health care benefits at the time of his death versus not receiving the benefits at the time of his death, determining whether the surviving spouse can then get the benefit? That was the reason the Babula's court gave for why its interpretation of the contract made sense. And that's exactly the situation we have here. Although if there are two possible interpretations that are arguably persuasive, then that would suggest that the provision is ambiguous, wouldn't it? I don't think there are two plausible interpretations, and I want to walk through the logic for that. The district court's belief that there were ambiguity here was not that there was some ambiguous word or phrase in the contract. You mean in our case, not the Second Circuit case? In this case, Your Honor. Okay. The district court found ambiguity not because there was some word or phrase in the contract that he thought was subject to two reasonable interpretations. He just thought it was very unusual or odd to read the contract to promise lifetime benefits to surviving spouses but not to retirees. And the rebuttal to that is uncommon or unusual is not the same thing as ambiguous. Well, I mean, the point would be that the language of the agreement determines whether or not there's ambiguity, not whether it's common or not. I mean, and if ambiguity is to be found, it's found in the language of the agreement. If it's unambiguous, that's also determined based on the language of the agreement. And only when there's ambiguity do you get to a wider range of evidence that you can consider. I agree with that, Judge Gibbons, yes. I want to ask a question about, I'm not moving on. Did you get an answer to what? Okay. I don't want to step on anything that's left hanging. So I want to ask you a little bit about our law generally in this area, some of which I've been right in the middle of dealing with. My view of where we've come is that we've come to a point where the language and structure of the agreements matter a great deal. And while I've written an opinion in Kelsey Hayes and an opinion in Reese, I'm a little uncomfortable with the fact that the work seems so hard, the analytical and careful analytical work seems so hard in each of these cases. Do you have any thoughts about that? I do. I have a lot of thoughts. Well, try to tell me. Try to tell me very quickly. I do think, with all due respect to the court, I do think parties continue to struggle with the law in this area. And it is, as you say, part of it is driven by the contracts. There are different contracts with different provisions. But a lot of them have very similar provisions as well. And I think there is some inconsistency, with all due respect to this court, in the legal principles that have been set down in various decisions. Here's my view of it. I thought we started out with Gallo. And then if you interpreted Gallo in the way some of my colleagues were interpreting Gallo, I thought we were failing to do the analysis mandated by Tackett. And so I thought it was more important to take a very case-specific approach. However, I didn't want to see us transform what was a factual finding into a legal principle. However, I have to admit that while I personally can't see another analytical path, I find it a little unsatisfying that it seems like we're starting over again every time we have one of these cases. I hear you, Your Honor. And I think part of the trouble, and I see my time has expired, if I might have leave to answer. I think part of the trouble is I think people are torn between, we know yard man is no longer good law, but people are also worried about creating a clear statement rule in the other direction. And so what ends up is you end up in this kind of... My point is that we don't have clear statement rules anymore. I mean, that's the point. It is, but, Your Honor, I think that some of the traditional principles of contract law that Tackett enunciated, they don't create a clear statement rule, but they do provide kind of very good guidance, right? Which is, and I thought Gallo did a nice job of laying this out, which was, look, if a contract has a durational clause, then the durational clause gets a lot of weight, it gets respect, and then you look back at a specific provision to see, okay, in that specific provision, is there an indication that the parties didn't want the general durational clause to apply to that? And in this case, there just isn't. There's nothing in respect to retiree health care. I think that doesn't call into question the result in either Kelsey Hayes or Reese. I mean, Your Honor, my... I don't want to have an extended conversation with you about... I don't want to relitigate Reese or Kelsey Hayes with you. It's not in your interest probably to do so. I do think the court can decide this case in our favor without resolving these various conflicts. Well, I'm not sure I disagree with you on that. But to the extent there is conflict between Gallo and Reese and Kelsey Hayes, Gallo would obviously control in light of its first-in-time principle. I see my time has expired. Sure. Thank you. You may proceed. May it please the Court. John Adam on behalf of the retirees. Judge Rice's post-trial merits judgment is well-grounded in the CBA and in the record evidence. Judge Rice held, following a trial, consistent with the CBA terms, supported by the record evidence, and based upon application of the ordinary principles of contract law, that Honeywell promised vested health care, health care that would survive expiration of the collective bargaining agreement. And Judge Rice did exactly what Tackett instructed, was to find out what the party's intentions were. There are multiple grounds to affirm Judge Rice, and I'd like to address two grounds in my brief time. First, the CBA terms themselves, and second, Judge Rice held a trial. He heard the testimony of bargainers and made findings of facts and found that the overwhelming evidence supported the retirees. But first, let's go to the CBA terms. It's undisputed that Honeywell promised retiree health care to the retirees and to their families. And Judge Rice looked at the contract language that says, upon death of a retiree, Honeywell will continue for the spouse and the dependent children health care for their lifetime. That is a durational promise upon death, will continue, there's no break, will continue for the lifetime of the spouse. Judge Rice looked at this language and stated that it created a strong inference that the retirees would have the health care for their life until they died, and that it would pass on, will continue, to the retiree survivor and dependent children. It's pretty hard to support your argument with much of a textual analysis, and Judge Rice didn't try. I mean, I think that Mr. Allen accurately characterized what he did. It's really not a textual analysis. It seemed uncommon to him. Isn't that what Judge Rice did? No, Judge Rice found patent ambiguity because there's a promise to the retirees that they will have health care, and that upon death of the retiree, it will continue for the spouses for their lifetime. So at a minimum, that's a patent ambiguity. Well, isn't that modified by the durational clause, though, that takes away the ambiguity? I don't think so, Judge Bush. The durational clause addresses contract language where there is no durational language at all. For example, in Gallo, there is no durational language, just continued health care. This language has durational language. Upon death of the retiree, it will continue for the lifetime. At the very least, that creates an ambiguity based on patent, the patent ambiguity doctrine, also based upon latent ambiguity. Judge Rice, therefore, did what he should have done. He said, let's conduct a trial and let the parties present evidence as to what the intention of the parties were. But I would go back and point out with respect to the language, Judge Gibbons, that our language, I believe, is far stronger than the language that was in Kelsey Hayes or Reese. Kelsey Hayes just had will continue language. We have upon death of the retiree, will continue, and then lifetime. That language, I believe, is even stronger that this court held was ambiguous, and it's stronger than the language in Reese, and it's stronger than the language in Gallo. And Honeywell likes to invoke Gallo as if it's an incantation that it decides everything. As you pointed out, Judge Gibbons, in your denial of rehearing in Kelsey Hayes, these cases are fact specific. And you just can't apply general propositions without looking at the contractual language. And here, this contractual language, at the very least, Judge Rice found was ambiguous, and then he directed a trial. And at trial, the testimony overwhelmingly, Judge Rice found, supported the retirees. Because at the arguments on the contract language, Judge Rice asked Honeywell. Honeywell is saying that there's vested health care for the surviving spouse. Honeywell says yes. There's vested health care for the retiree's dependents. Yes. But there's not health care vested for the retiree. And Honeywell said that was their position. And Judge Rice said that was not supported by the language or at least provided one plausible interpretation. But at the very least, it created ambiguity. It seemed to defy common sense that it benefit that was earned by the retiree. The retiree themselves would not have vested health care, but that the survivors would. So Judge Rice held a trial, and the UAW bargainers testified that the practice that had existed prior to 2000, because UAW took over this plan in 2000. And the first thing they did is to figure out what the practices were with respect to health care. And they met with the HR manager at Honeywell, Mr. Ream, who was the person that knew benefits. And they were advised that there's vested health care for retirees, but that the company does not pay for survivor benefits. So the UAW got this language, incorporated it into the contract. The parties discussed it as a vested health care benefit for the retiree. The testimony of the UAW witnesses were that at bargaining, they stressed that the reason for giving this benefit is, retirees have health care until they die. The retirees have lifetime health care. It should be continued for their spouse when they die, and the company should pay a portion of it. That's the context in which this took place in 2000. That's the context in which Judge Rice made credibility resolutions in favor of the retirees. And that makes perfect sense given the context and the content of this contract. But we have more than just 2000. Then later on in 2003, there was discussions about caps. And Honeywell agreed that the only changes that could be made that were adverse to retirees would be perspective only. They cannot go back retroactively because UAW told them in bargaining, it's illegal. You cannot alter benefits of retirees who vested prior to this contract in 2003. In 2011, Judge Rice then heard the testimony of Honeywell's chief bargainer, Richard Hancock. He was the last bargainer for Honeywell before they sold the plant. And Honeywell went into that contract knowing that they were eventually going to sell the plant. And Honeywell wanted to reduce the opportunity for retirees, for individuals to retire with vested health care. And Honeywell first proposed a 30-day period under the new contract. You've got 30 days to retire to get your health care. BuzzFink testified that he raised, quote, hell about this. He told Hancock that these retirees had earned this health care, that it was lifetime health care, and they are entitled to retire with it, that they earned it. And Honeywell and UAW agreed to extend, to use the words of Mr. Hancock, the last window of opportunity to retire with vested health care. And Mr. Hancock testified that the premise of the retiree health care negotiations was lifetime. This was Honeywell's last chief bargainer. And that's what BuzzFink testified. BuzzFink was there in 2000 for the UAW. He was there in 2003, 2008, 2011, that the retirees had vested health care. This was the premise upon which the parties operated. And Judge Rice found for all those reasons that the party's intention was not to limit the promise of health care to the surviving spouses. Honeywell calls it an idiosyncratic promise. Judge Rice found there was not a single piece of evidence that supported Honeywell's argument that this was a unique, special benefit that only would apply to survivors. This benefit applies, the lifetime promise applies to retirees and their spouses. That's the only logical, common sense way to understand what happened. And that's why the language is important. In that language, I would go back to suggest that there's many ways to express vesting of a health care promise. There's no magic words. Gallo doesn't require it. Tackett doesn't require it. Kelsey Hayes and Reist don't require it. It can be expressed in many different ways. And that's what the UAW bargainers testified to is they put in language upon death that the retirees will continue was designed to put into practice the language of lifetime health care. And then after the last contract expired, if we need any more evidence, the last contract expired, what happens? Does Honeywell terminate health care benefits? No. Health care benefits continue. That is post-expiration conduct, undisputed post-expiration conduct, that shows that the promise did not end at expiration of the CBA. And Honeywell wants to say that the promise, even to the surviving spouses now, is limited. Now, Honeywell says that if a retiree dies after the contract expires, the survivor does not get lifetime benefits. They're reading out, even for the survivors, the concept of lifetime. Where does it say upon death of the retiree, assuming the retiree only dies during the contract, we will continue health care? It doesn't say that. Honeywell's interpretation is untenable. And there are Sixth Circuit and other courts that have said the notion that the parties negotiated a greater benefit for the spouses than the retirees is unreasonable and absurd. And Judge Rice... Back to that. I'd like to ask you about that Second Circuit case, the Baboulas case. Yes. How do you distinguish that going back, just looking at the language of the CBA in that case versus this case? It's very easy to distinguish it, Judge. It's not a contract case. There was not the party's intention under Tackett controls. That was not a contract. That was a unilaterally issued summary plan description. So there was not two interpretations by the parties to the contract, as there is here. And in that case, it was a plan document that was issued. And this language that they're talking about was not even in the summary plan description. It was in a letter. And then some of the surviving spouses tried to latch onto the letter. So you don't have Tackett controlling it, which is the party's intentions control, was the promise intended to survive expiration of the CBA. Not magic words. So you can't get to that point unless there's ambiguity to be found in the language of the agreement. Do you at least agree with that and that principle? In general, Judge, I would just like to qualify it, though. I believe Tackett talks about you look to the language. But Tackett also says you apply consistent with federal labor policy, which deals with usage and practice. Now, contract law generally says what I just said, right? Generally, yes, Your Honor. So we would have to find that Tackett meant something other than applying general contract principles, and we would have to interpret Tackett as saying some stuff about contract principles but also saying some stuff about labor policy that would override contract principles. Is that how you would have us interpret Tackett? No, Your Honor. I think it says you apply the ordinary principles of contract law as long as they're not inconsistent with federal labor policy. And federal labor policy in interpreting collective bargaining contracts outside of the retiree health care context, they look at the practices, industry standards, et cetera. Course of conduct is considered when interpreting contracts. The Supreme Court has said CBAs are not ordinary contracts. But, Your Honor, I don't think you need to get to the issue of trying to determine whether Tackett means you can also look at course of conduct when interpreting the four corners of the contract. Because here, this language is language I believe that is stronger than it was in Reese or Kelsey Hayes, and that at the very least it creates an ambiguity when you promise health care to the retirees and their families and then say upon death, we'll continue. You know, Mr. Allen articulated several reasons that that might have been done. Right. And we had a trial, Your Honor, and none of the witnesses testified that that's what this language was intended to do. Judge Rice had said the language was unambiguous. You wouldn't have had that trial, right? In our favor? Well, I think if he had found the language unambiguous, he would have ruled against your position now. Judge Rice, in his opinion, said there's a very strong inference. Right. I'm not asking you about what Judge Rice found. I'm asking you about the consequences of his having found something else. Oh, he directed a trial for the parties. I give up. I'm sorry, Your Honor, if I misunderstood the point you were making. And I want to go back to that because having a trial allowed the parties to present evidence. In Mr. Allen's explanations for why the parties might have done it, there was not any witness from Honeywell or the UAW that testified that was the reason. There was no testimony from any witness that said the parties were intending to create a special benefit that was limited to surviving spouses. The evidence was that the retirees had vested health care and we wanted to extend it to surviving spouses and we wanted to put language in the contract. And in 2000, when this language was negotiated, upon death of the retiree, we'll continue, the parties understood that that was creating a vested right to health care. And that's how it was interpreted and applied by Honeywell. And Judge Rice made findings of fact and credibility resolutions that supported that interpretation and understanding. So based upon the strong language, or at least we believe at least ambiguous language, based upon the record evidence, Judge Rice's findings of fact, his credibility resolutions, based upon a common sense reading of the contract language, we believe that Judge Rice's findings of fact and conclusions of law and his finding that the retirees are entitled to vested health care should be affirmed. I'd be happy to answer any more questions. Apparently, there are none. Thank you. Your Honors, we do believe the contract's unambiguous. And there's one more aspect of the contract I didn't get a chance to highlight in my initial argument that I'd like to highlight here. And I think it's something that I don't believe was true in either Rice or Kelsey Hayes. And that's the fact that each of the post-2000 contracts, each renewed and continued benefits for people who had retired under prior contracts. Each of the post-2000 contracts would renew health care benefits for what they called current retirees, people who had retired under prior contracts. And this Court has now held three times in Watkins, in Gallo, and in an unpublished decision from September of this year called Serafino, that such language indicates that benefits are not vested. As this Court recently said a few weeks ago in Watkins, language continuing health care benefits for current retirees, quote, implies that health care benefits had not vested because there would be no need to continue benefits if prior agreements had created vested rights to such benefits. So I think that's more evidence that the contracts here are unambiguous about the duration of retiree health care benefits. Judge Bush, I did have a chance to look back at the language from Bouboulis. It does use the language, will continue. So we wanted to provide a direct answer to that question. Two more quick points before I sit down. We do think the contract is unambiguous. But even if the Court reaches the extrinsic evidence, we do think there's a lack of a record here that would establish an agreement by Honeywell to provide lifetime health care benefits, given that the District Court held that it was undisputed that no language in the pre-2000 CBAs promised this benefit, and the District Court held that it was undisputed during 2000 bargaining that the UIW did not submit any proposal asking Honeywell to provide health care benefits for the lifetime of the retirees. And finally, Your Honors, whatever this Court holds with the post-2000 CBAs, we strongly think those contracts are not ambiguous and that the lower court erred on that. But if the Court disagrees, at the very least, the Court should reverse with respect to the pre-2000 CBAs, which contain no language, which could even arguably be argued to create ambiguity about vesting. With that, I would yield the balance of my time. Thank you very much. Case is submitted.